**Mark J. FERRELL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8808–CR–732.**

Supreme Court of Indiana.

Jan. 30, 1991.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant Mark J. Ferrell was convicted of Burglary, a Class B felony, Forgery, a Class C felony, and Theft, a Class D felony. Ferrell was sentenced to sixteen (16), eight (8), and four (4) years, respectively, all sentences to run concurrently for a total of sixteen (16) years. He appeals directly to this Court and raises the following three issues:

1. Whether the trial court erred in finding the unoccupied structure Ferrell broke into was a dwelling as defined by Indiana law;

2. Whether there was sufficient evidence to sustain the convictions and sentences imposed; and

3. Whether the sentences imposed are manifestly unjust.

The facts most favorable to the verdict show that on or about September 1, 1987, Ferrell broke into a residence owned by the victim, Raymond Bond, who had been previously married to Ferrell's aunt. While at the residence, Ferrell, posing as Bond, contacted Gus Mascari of Beech Grove Auction to sell various items of furniture located in the residence. Mascari went to the house and bought a video-cassette recorder, a color television set, a living room set, a table and chairs, a chest and dresser, a queen size bed, and a refrigerator from Ferrell, who signed the sales agreement/receipt in Bond's name. The Indianapolis Police apprehended Ferrell in the residence. At the time of his arrest, Ferrell was wearing a sweater, shorts, and a gold bracelet which belonged to Bond.

In a statement he later gave to the police, Ferrell admitted that he had forced open the back door of the house without the permission of the owner. Ferrell also admitted he did not have permission to sell the items in the house to a used furniture dealer or sign a receipt in the owner's name.

## I. *Was Bond's House a Dwelling?*

Ferrell's first contention is he should have been found guilty of only a class C felony, burglary, because the structure he broke into was not a dwelling for purposes of the burglary statute, IC 35–43–2–1. That statute provides:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant.

The term "dwelling" is defined in IC 35–41–1–10 as follows:

a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging.

Ferrell argues the structure in question did not contain "those accoutrements usual to the convenience of habitation" and therefore did not constitute a dwelling, citing *Burwell v. State* (1988), Ind.App., 517 N.E.2d 812, 815. In that case, the Court of Appeals upheld Burwell's class B burglary conviction for burglarizing an apartment when no one was home. The victim in *Burwell* moved herself and her three children out of their apartment and into the safety of her parents' home after she discovered that her front door had been tampered with. Burwell burglarized the apartment three days later. At the time of the burglary, the victim no longer intended to sleep in her apartment; however, she had not relinquished possession and control to her landlord. The Court of Appeals stated:

the term "dwelling" has been legislatively enlarged to afford protection to interests in the sanctity and security of habitation which, once established, do not necessarily fail because of the lack of use for purposes of sleep.

*Burwell*, 517 N.E.2d at 814. Noting the victim's apartment still contained her food,

utensils, personal belongings and clothing, the *Burwell* court went on to say:

> a structure, once a dwelling, does not lose that character until such time as its inhabiter vacates the premises to the extent it no longer contains those accoutrements usual to the convenience of habitation.

*Id.* at 815.

In the instant case, Ferrell contends the house he burglarized did not contain those accoutrements usual to the convenience of habitation. Unlike *Burwell*, Ferrell argues the victim in the instant case had put his house up for sale and had not slept there for approximately four months prior to the burglary. In fact, Bond did testify he was living with his girlfriend on a regular, full-time, basis at the time of the burglary and kept very little food in the house because he ate at his girlfriend's place. According to Ferrell, Bond merely stored his furniture, appliances and clothes in the house while it was listed with a real estate broker to be sold. The record, however, reveals evidence to the contrary. Bond maintained his home mailing address and telephone number at the house. In addition, Bond testified he went to the house nearly every day to pick up his mail and occasionally would go inside for a few hours to watch television or to get something to eat. In our opinion, Bond's furniture, appliances, clothing and food which he kept in the house did constitute those accoutrements usual to the convenience of habitation; therefore, his house did not lose its character as a dwelling. *Burwell, supra.*

In *Phillips v. State* (1987), Ind., 514 N.E.2d 1073, this Court rejected appellant's argument that the residences he burglarized were not dwellings as defined in IC 35–41–1–10 because the families who occupied those residences were temporarily out of their homes on vacation at the time of the break-ins. This Court held the burglary statute, IC 35–43–2–1, does not require the occupier of the residence to be in the home at the time of the burglary. *Phillips*, 514 N.E.2d at 1075 (citing with approval *Jones v. State* (1983), Ind.App., 457 N.E.2d 231, 233–34). Similarly, in *Welch v. State* (1987), Ind., 509 N.E.2d 824, the vic-

tim's apartment was burglarized when he was not home. At the time of the burglary and for approximately one week prior thereto, the victim had been temporarily staying at his parents' house while awaiting the arrival of new furniture to replace that removed by his former roommate. He returned to his apartment shortly after the burglary. *Welch*, 509 N.E.2d at 825. This Court held that the victim's temporary absence did not alter the character of his apartment as a dwelling. *Id. Accord, Middleton v. State* (1979), 181 Ind.App. 232, 391 N.E.2d 657 (character of residence not vitiated where owner, temporarily absent while on five-month vacation, intended to return and did, in fact, return).

This Court has traditionally held burglary, like arson, to be an offense against the habitation. *Carrier v. State* (1949), 227 Ind. 726, 732 n. 3, 89 N.E.2d 74, 76 n. 3. This is reflected in the burglary statute itself, which provides for greater penalties the closer the offense comes to endangering another's life or well-being. IC 35–43–2–1. Even though Bond had not slept in the house for four months, he maintained his home address and telephone number there and would stop by to pick up his mail and generally check out the house on a regular basis. The victim's house constituted a "dwelling" for purposes of the burglary statute.

We find no error on this issue.

## II. *Sufficiency of the Evidence*

▪ Next, Ferrell contends the State failed to prove beyond a reasonable doubt all elements of the crimes charged. He concedes that he was in Bond's home, sold certain items belonging to Bond and signed Bond's name on a sales receipt. However, Ferrell maintains his innocence because he claims he did not have the requisite criminal intent to commit the crimes of burglary, theft and forgery. Specifically, he alleges Bond gave him permission to stay at the house and use Bond's guaranteed life card for identification purposes to assist him in selling Bond's video-cassette recorder. Bond testified he did not give Ferrell permission to reside in the house, sell any of the goods, or sign his name. We have held that the uncorroborated testimony of

one witness is sufficient to convict, even if the witness in question is the victim. *Henley v. State* (1988), Ind., 522 N.E.2d 376, 378.

 Regarding his burglary conviction, Ferrell specifically challenges the sufficiency of evidence regarding the breaking itself. Breaking is proved by showing that even slight force was used to gain unauthorized entry including opening an unlocked door. *Henley*, 522 N.E.2d at 379. The State introduced evidence that a padlock on the back door to the house had been broken and the back door had fresh pry marks on it when the police were summoned to the house on September 1, 1987. Ferrell argues the State presented no physical evidence that he was the one who broke the padlock and, furthermore, the used furniture dealer who entered through the back door testified he noticed nothing unusual about it. Ferrell also notes Bond's house alarm did not go off when he allegedly broke into the house. However, in his statement to police made shortly after his arrest, Ferrell admitted he gained entry to the house by pushing in the back door. At trial, Ferrell changed his story, stating instead that he entered the house through a side door on the night of August 30, 1987, and spent the next few days in the house. Ferrell testified he used a key that Bond had made for him and turned off the house alarm using the alarm's combination which Bond also gave him. Whether he gained entry to the house by unlocking the side door or by pushing in the back door, Ferrell used sufficient force to constitute a breaking. *Henley, supra*. The question then becomes whether Ferrell's entry was authorized. Ferrell maintains he had permission to be in the house. On direct examination, Ferrell testified he did not believe Bond meant it when he told him to leave the house on August 29, 1987, because Bond was "slightly high" at the time. However, on cross-examination, Ferrell admitted he was supposed to be out of the house by Saturday, August 29, 1987, and did not have permission to be in the house on the day he was arrested, Tuesday, September 1, 1987. Regardless of whether Bond allowed Ferrell to use the house earlier in the week, as Ferrell contends, there is sufficient evidence to find that his entry on or about August 30th was unauthorized.

We find there was sufficient evidence to sustain Ferrell's convictions.

### III. *Propriety of Sentences*

 Finally, appellant contends the sentences imposed were manifestly unjust. Ferrell cites IC 35–38–1–7(c) and maintains the trial court should have considered the following mitigating circumstances: the crime neither caused nor threatened serious harm to persons or property; there were substantial grounds tending to excuse or justify the crime, though failing to establish a defense; the person has made or will make restitution to the victim of his crime for the injury, damage, or loss sustained; and imprisonment will result in undue hardship to the defendant. Ferrell contends the burglarized house was not seriously damaged; he believed Bond authorized him to stay in the house and to sell his video-cassette recorder; the money received from the used furniture dealer was returned; and imprisonment will result in undue hardship to Ferrell due to his young age. We do not agree with this analysis. We have reviewed the trial judge's findings and conclusions prior to sentencing and find that he properly weighed the mitigating and aggravating factors before enhancing the presumptive sentence.

 Our standard is clear: we will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for whom such sentence is imposed. *Coleman v. State* (1986), Ind., 490 N.E.2d 711, 715; Ind. Appellate Rule 17(B). The trial court noted Ferrell's juvenile record and stated if Ferrell was a few years older, he would be considered an habitual offender. Further noting Ferrell committed the instant crimes less than one week after he was released from prison on parole from another house burglary where he stole a revolver and an automobile, the trial court properly found there was a great risk that Ferrell will commit another

crime in the future. In addition, as part of his explanation at trial regarding the fresh pry marks on the back door, Ferrell testified that Bond had assaulted his girlfriend in the house and had a friend of his bar the side door. Ferrell stated he had to break in the back door to save his girlfriend. Although he maintained he was authorized to sell the video-cassette recorder, this incident with his girlfriend was the reason why he decided to sell the rest of Bond's property. Ferrell even admitted he was so angry at Bond for this incident that he planned on burning the house to the ground after the furniture was sold and hauled away. In any event, in an effort to corroborate his story, Ferrell wrote two letters to the trial judge and signed his girlfriend's name to them. A questioned documents examiner compared these letters to one Ferrell had sent to the prosecutor in his own name and concluded they were written by Ferrell. Based in part on these bogus letters, the trial court found Ferrell was not a person of good character. In spite of his apparent disdain for Bond regarding the alleged assault of his girlfriend, Ferrell said he respected Bond because he does what he has to do to make ends meet, whether it be against the law or not. Ferrell admitted he envied Bond, whom he accused of being a drug dealer, because he lived the "good life," and if he were not on trial for burglarizing his house, he would probably still be with him, making "top dollar." The trial judge referred to this testimony as well in his list of aggravating circumstances, and noted there was no evidence other than Ferrell's own testimony that Bond was, in fact, a drug dealer. The only mitigating factor the trial court found was Ferrell's young age. Given the facts of this case, including the nature of the crimes and the character of the offender, we cannot say the sentences imposed were manifestly unreasonable.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.