**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ANTHONY S. CHURCHWARD**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEFFAN SOLOMON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1109-CR-402 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1003-FB-52

**April 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Steffan Solomon appeals his convictions and sentence for sexual misconduct with a minor as a class B felony,[1] sexual misconduct with a minor as a class C felony,[2] and contributing to the delinquency of a minor as a class A misdemeanor.[3] Solomon raises two issues, which we revise and restate as:

I.      Whether the evidence is sufficient to sustain Solomon's convictions;

II.     Whether the court abused its discretion in sentencing Solomon; and

III.    Whether Solomon's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

The relevant facts follow. Solomon, who was born on May 9, 1975, lived with his wife, children, and brother. S.C., who was born on December 1, 1993, lived with her mother and stepfather in a house across the street from Solomon. Solomon and S.C.'s family had been friends since approximately 2001 and socialized at neighborhood functions and visited each others' houses on many occasions.

In March or April 2009, Solomon's wife and children traveled to Trinidad to visit family. Soon after his wife left for Trinidad, Solomon called S.C. and left a voicemail, and then "after that [Solomon and S.C.] talked more on the phone every day for hours and hours." Transcript at 46. Some of the calls were made during the night and at "4:00, 5:00, 6:00, all night." Id. at 48. Solomon and S.C. would spend "[m]aybe [] two [], three [] hours a day" on the phone with each other. Id. About this time S.C. also started to

---

[1] Ind. Code § 35-42-4-9 (Supp. 2007).

[2] Ind. Code § 35-42-4-9 (Supp. 2007).

[3] Ind. Code § 35-46-1-8 (Supp. 2006).

visit Solomon's house more often.  Solomon encouraged S.C. to visit him, and there came a time when S.C. started to clean, do the dishes, and straighten up the house for Solomon.  S.C. was "starting to like him a lot" and "kind of in a romantic sense."  Id. at 52.  Solomon told S.C. that "he loved [her] every single day."  Id. at 80.

In July 2009, Solomon's wife and children returned to Indiana, and Solomon continued to call S.C., but from his work phone only and not from his home phone.  In August 2009, S.C.'s mother noticed what she considered to be an explicit text message sent to S.C. from a phone which belonged to Solomon's nephew and eventually instructed S.C. not to visit Solomon's house.  Although he was aware that S.C.'s mother had instructed her not to visit, Solomon continued to speak with S.C., and S.C. would sneak over to his house when possible.

On November 6, 2009, at approximately 9:00 a.m., Solomon called S.C. and stated that "he was on his way home and that . . . his brother, was going to renew his license and . . . would be gone," that "the way [S.C.] would know when [Solomon's brother] left was he'd leave the van parked outside and leave the garage up" and that "when [she] s[aw] the van gone that means [she] can come over."  Id. at 60.  S.C. "told him okay," told her mother that she "was leaving to go do somebody's hair," and then, when the van was gone, "snuck in" to Solomon's house.  Id.

When S.C. arrived at Solomon's house, Solomon's two children were sleeping in the house.  Solomon poured brandy, and Solomon and S.C. "did a couple shots each."  Id. at 62.  Solomon then "suggested that [they] go in the garage and [] grabbed [S.C.'s] coat and []  a blanket."  Id.  Solomon and S.C. went to the garage and sat down on a futon

3

couch and "were just sitting there talking." Id. Solomon then began to kiss S.C.'s "neck and [her] lips." Id. at 63. Solomon then performed oral sex on S.C. He then turned S.C. over and had anal sex with her. Solomon learned from his brother that he was returning to the house to retrieve a wallet he had forgotten, and Solomon "put [S.C.] outside in a shed" in the backyard of the house. Id. at 66. After Solomon's brother retrieved his wallet and left the house, Solomon "got [S.C.] from the shed," and S.C. went to "put [her underwear] in [her] pocket" but "instead, [Solomon] took 'em and put 'em in his pocket." Id. at 67. Solomon's children woke up, and S.C. returned home.

On November 10, 2009, S.C. told a teacher at her high school what had happened with Solomon, and S.C.'s mother, child protective services, and law enforcement were contacted. S.C.'s mother, stepfather and father confronted Solomon, who admitted that he had given S.C. something to drink and had kissed her but denied that he had sex with her.

On March 31, 2010, the State charged Solomon with: Count I, sexual misconduct with a minor as a class B felony; Count II, sexual misconduct with a minor as a class C felony; and Count III, contributing to the delinquency of a minor as a class A misdemeanor. At the jury trial, Fort Wayne Police Detective John Helmsing testified that he investigated the case and did not collect physical evidence from S.C. by a medical examination because the disclosure of the incident was outside the twenty-four to ninety-six hour window to collect such evidence. The jury found Solomon guilty as charged. The court found violation of trust and the nature of the crime to be aggravating circumstances and Solomon's lack of a criminal record and medical issues to be

4

mitigating circumstances. The court sentenced Solomon to ten years for his conviction under Count I, four years for his conviction under Count II, and one year for his conviction under Count III, all to be served concurrently for an aggregate sentence of ten years in the Department of Correction.

I.

The first issue is whether the evidence is sufficient to sustain Solomon's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

Solomon argues that there was insufficient evidence to support his convictions, that "the substantive act of each charge was in dispute at trial and was not proven beyond a reasonable doubt," that "[t]he only substantive evidence submitted at trial which proved [] Solomon either engaged in deviate sexual conduct with S.C., touched or fondled S.C. or gave her an alcoholic beverage came from the uncorroborated testimony of S.C. herself," and that no physical evidence was presented which could "either corroborate or refute S.C.'s story." Appellant's Brief at 13. The State argues that the evidence was

5

sufficient to sustain each of Solomon's three convictions and that S.C.'s testimony was not incredibly dubious.

The offense of sexual misconduct with a minor is governed by Ind. Code § 35-42-4-9, which provides in part that "[a] person . . . who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor" and that "the offense is . . . a Class B felony if it is committed by a person at least twenty-one (21) years of age." In addition, "[a] person . . . who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits sexual misconduct with a minor," and "the offense is . . . a Class C felony if it is committed by a person at least twenty-one (21) years of age." The offense of contributing to the delinquency of a minor as a class A misdemeanor is governed by Ind. Code § 35-46-1-8, which provides in part that "[a] person . . . who knowingly or intentionally encourages, aids, induces, or causes a person less than eighteen (18) years of age to commit an act of delinquency (as defined by IC 31-37-1 or IC 31-37-2) commits contributing to delinquency, a Class A misdemeanor." According to Ind. Code § 31-37-2-6, "[a] child commits a delinquent act if, before becoming eighteen (18) years of age, the child violates IC 7.1-5-7 concerning minors and alcoholic beverages."

The record reveals that, after S.C. arrived at Solomon's house on the morning of November 6, 2009, Solomon gave S.C. brandy, and Solomon and S.C. "did a couple

6

shots each." Transcript at 62. S.C. indicated that she "took a couple of shots" of brandy and that Solomon "got it, he poured it and handed me the shot glass." Id. at 69. During cross-examination, Solomon indicated that S.C. "took it upon herself to have something to drink" but stated that S.C. did have alcohol to drink. Id. at 296. Further, Solomon testified that he had called S.C. on the morning of November 6, 2009, and told her to come over after his brother left in the van. Solomon also indicated that he was aware that S.C. "wasn't supposed to be over." Id. at 275. In addition, S.C. testified that, after she and Solomon went into the garage and were seated on the futon couch, Solomon kissed her on her "neck and [her] lips." Id. at 63. S.C.'s mother testified that, at the time she, S.C.'s stepfather, and S.C.'s father confronted Solomon, he admitted that he had given S.C. something to drink and had kissed her. S.C. further testified that Solomon then performed oral sex on her. S.C. testified that her pants were pulled down, that her underwear was off, and that Solomon touched her vagina with his mouth. S.C. further testified that Solomon then "turned [her] over and [they] had anal sex." Id. at 64. S.C. testified that Solomon touched her anus with his penis, that it went on the inside, and that it was painful.

Solomon asserts that the substantive evidence against him came only from the uncorroborated testimony of S.C. However, we note that the uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell, 565 N.E.2d at 1072-1073. To the extent Solomon presents an argument which suggests that S.C.'s testimony was inherently contradictory or incredibly dubious, we note that the

7

incredible dubiosity rule applies only in very narrow circumstances. <u>See</u> <u>Love v. State</u>,

761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

<u>Fajardo v. State</u>, 859 N.E.2d 1201, 1208 (Ind. 2007) (quoting <u>Love</u>, 761 N.E.2d at 810),

<u>superseded</u> <u>in</u> <u>part</u> <u>by</u> <u>statute</u> <u>on</u> <u>other</u> <u>grounds</u>. Solomon fails to show that the testimony

of S.C. was inherently contradictory. To the extent Solomon argues that S.C.'s testimony

was not believable, we note that this is an issue of witness credibility and the function of

weighing witness credibility lies with the trier of fact, not this court. <u>Whited v. State</u>, 645

N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the

credibility of the witnesses. <u>Jordan</u>, 656 N.E.2d at 817. Further, we cannot say that the

testimony of S.C. regarding her communications or actions with Solomon, including the

testimony that Solomon kissed her, put his mouth on her vagina, or inserted his penis into

her anus was so inherently improbable that no reasonable person could believe it.

Solomon does not show how the testimony against him was somehow internally

inconsistent or that S.C.'s testimony was incredibly dubious.

Based upon our review of the evidence as set forth in the record and above, we

conclude that sufficient evidence exists from which the trier of fact could find Solomon

guilty beyond a reasonable doubt of sexual misconduct with a minor as a class B felony,

sexual misconduct with a minor as a class C felony, and contributing to the delinquency of a minor as a class A misdemeanor.

## II.

The next issue is whether the court abused its discretion in sentencing Solomon. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id. at 491.

Solomon argues that, although the court found his lack of prior criminal history to be a mitigating circumstance, the court "somehow tempered it by stating that it was a 'kind of double-edged sword'" and that "[t]his statement combined with the declaration that [] Solomon had 'jump[ed] into a Class B felony" shows that the trial court did not weigh this significant mitigating circumstance very heavily." Appellant's Brief at 16. Solomon further argues that "[w]hile not considered by the trial court in its sentencing statement, [he] also offered assistance to the State of Indiana in another case" and that "[w]hile not a significant mitigator, this fact should have been considered by the trial court and does speak highly of [] Solomon's character." Id. at 16-17. Solomon also

9

argues that S.C. "was less than one (1) month from her sixteenth birthday when the offenses . . . were committed." Id. at 17. The State argues that Solomon "received a sentencing benefit from his lack of criminal history" and that "Solomon's alleged attempt to cooperate with law enforcement in an unrelated case is neither significant nor clearly supported by the record." Appellee's Brief at 13-14.

The determination of mitigating circumstances is within the discretion of the trial court. Rogers v. State, 878 N.E.2d 269 (Ind. Ct. App. 2007), trans. denied. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id.

At sentencing, the court heard statements from Solomon's counsel regarding Solomon's willingness to cooperate with law enforcement and prosecutors in an unrelated case and his lack of criminal history. The court found that Solomon's lack of criminal history was a mitigating circumstance and stated: "It's kind of a double-edged sword . . . because you come here with no criminal record and jump into a Class B felony . . . ." Transcript at 26. The court made no express finding regarding Solomon's willingness to cooperate in the unrelated case.

To the extent Solomon argues that the trial court improperly assessed the weight to be assigned to his lack of criminal history as a mitigating circumstance, we note that the argument is, in essence, a request for this court to reweigh that factor, which we may not do. See Anglemyer, 868 N.E.2d at 490-491. With respect to Solomon's assertion that the court abused its discretion in failing to consider S.C.'s age as a mitigating

10

circumstance, we note that Solomon does not point to the record to show that he presented any argument on this factor as a proposed mitigator at sentencing. See id. at 492 (holding that a sentencing court "does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing"). Further, with respect to Solomon's argument that the court abused its discretion in failing to accept his willingness to cooperate with law enforcement and prosecutors in an unrelated case as a mitigating circumstance, we note that Solomon acknowledges in his brief that the factor is "not a significant mitigator." Appellant's Brief at 17. We cannot say that the court abused its discretion in declining to identify or accept Solomon's proposed mitigating circumstance of his willingness to cooperate with law enforcement in an unrelated case.

Based upon the record, we conclude that the court did not abuse its discretion in sentencing Solomon.

### III.

The next issue is whether Solomon's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

In support of his argument that his aggregate sentence of ten years is inappropriate, Solomon asserts that "the most outstanding fact is that he has no prior

criminal history," that he "presented nine (9) letters from community members which all spoke very highly of his character," that the court "heard the live testimony of [his] neighbor, his aunt, his former co-worker, a friend and his spouse prior to sentencing" and that "all testified to [his] many good qualities," and that he "offered assistance to the State of Indiana in another case." Appellant's Brief at 15-16. Solomon further argues that he "was charged with a single episode of criminal conduct involving S.C. which took place on November 6, 2009," that "[t]his court should also consider S.C.'s age as a nature of the offense" and that S.C. "was less than one (1) month from her sixteenth birthday when the offenses . . . were committed." Id. at 17. The State argues that Solomon's ten-year sentence is not inappropriate and that Solomon "groomed" S.C. for years. Appellee's Brief at 15 (citing Sentencing Transcript at 28). The State points to the facts that Solomon spoke with S.C. every day and encouraged her to visit him, invited S.C. to his house against her mother's wishes, provided her with "two shots of brandy and then preyed on her: kissing her, performing oral sex on her, and having anal sex with her." Id. at 16.

The record reveals that Solomon and S.C.'s family had been friends since approximately 2001 and socialized at neighborhood functions and visited each others' houses on many occasions. The record further shows that, after Solomon's wife and children traveled to Trinidad in March or April 2009, Solomon began to speak with and visit S.C. frequently, including "on the phone every day for hours and hours" and sometimes during the night at "4:00, 5:00, 6:00, all night." Transcript at 46, 48. S.C. started to visit Solomon's house more often, and Solomon encouraged her to do so.

12

Although he was aware that S.C.'s mother had instructed her not to visit him, Solomon continued to speak with S.C. and ask her to visit. S.C. testified that Solomon "used to tell [her] that he loved [her] every single day." Id. at 80. On the morning of November 6, 2009, Solomon arranged for S.C. to sneak over to his house while his brother was away. When S.C. arrived, Solomon poured brandy and S.C. had several shots. Solomon took S.C. to the garage, where he kissed her neck and lips, placed his mouth on her vagina, and inserted his penis into her anus.

While the record reveals that Solomon may not have had a criminal history and that evidence of letters and testimony from Solomon's family and community members regarding his character were presented at sentencing, the nature of the offenses as described above and revealed by the evidence leads us to conclude that the term imposed by the trial court, consisting of advisory and concurrent sentences, is not inappropriate. After due consideration, we conclude that Solomon has not sustained his burden of establishing that his aggregate sentence of ten years is inappropriate in light of the nature of the offenses and his character.

For the foregoing reasons, we affirm Solomon's convictions and sentence.

Affirmed.

BAKER, J., and KIRSCH, J., concur.