**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY J. LEMON**
Knox, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SAMUEL BRADLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 75A05-1211-CR-647 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Jeanene Calabrese, Judge Pro Tempore
Cause No. 75C01-1107-FB-25

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Samuel Bradley appeals his conviction for attempted deviate conduct as a class B felony. Bradley raises two issues which we revise and restate as:

I. Whether the evidence is sufficient to sustain his conviction; and

II. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

FACTS AND PROCEDURAL HISTORY

On June 4, 2011, T.D. was an inmate in the Starke County Jail. At the time he was twenty-one or twenty-two years old, was five feet, one inch tall, and weighed approximately 120 pounds. That night, a fight broke out in the jail, and T.D. "was supposed to get up and fight with Matt Shoaf," but T.D. "didn't want to fight [and] backed down." Transcript at 137. T.D. was pressured by inmates Bradley, Adam Makowski, and Buddy Blankenship to fight.

The following day, Bradley, Makowski, and Blankenship "dr[a]gged [T.D.] into [a] room because [he] didn't want to go fight back Shoaf." Id. at 139. All three men told T.D. that he "better go out there and fight [Shoaf] or [he was] going to have consequences." Id. T.D. told them he did not want to fight. Bradley, Makowski, and Blankenship pushed T.D. into the middle of the room to fight, and then Blankenship dragged T.D. back into a room. T.D. was thrown up against the top bunk, and Blankenship pulled down T.D.'s pants. Bradley stood in the area between the smaller room and the larger cell block area, and T.D.'s buttocks were "getting touched and grabbed." Id. at 141. T.D. struggled with the men and managed to exit the room briefly, and Bradley, Makowski, and Blankenship followed him and forced him back into the

2

room. Blakenship placed T.D. in a headlock and forced T.D.'s head towards Makowski's penis.[1] Bradley stated someone was "getting violated in here," "did he have any blood leaking from his butt?," "get him Buddy, strip him naked," and "get him in here, I've got the camera unplugged." Id. at 167-168. T.D. broke free, ran to the cell block door, and began pounding on the door. A dispatcher, viewing a monitor, had observed Makowski, Blakenship, and Bradley overpower T.D. and force him into the smaller room and shut the door, and the dispatcher alerted the jailer on duty to assist T.D. As the jailer arrived at the door, T.D. was banging on it. The jailer opened the door so that T.D. could exit the cell block.

On July 5, 2011, the State charged Bradley with attempted criminal deviate conduct as a class B felony[2] and criminal confinement as a class D felony. At a jury trial, the State presented the testimony of T.D. and the dispatcher, along with the video recording of the incident, admitted as State's Exhibit 21. When asked by the court whether during the incident Bradley ever touched or hurt him, T.D. responded affirmatively, and T.D. later testified that Bradley "held [him] against the bunk-bed in jail." Id. at 158. The dispatcher testified that she observed the incident in progress, that she saw three inmates, Bradley, Makowski, and Blankenship, overpowering T.D. and "making sexually, vulgar comments in reference to raping him," that she heard the statements made by Bradley, Makowski, and Blankenship, and that she recognized Bradley's voice. Id. at 164. The jury found Bradley guilty of both charges and

---

[1] Bradley does not challenge the actions of Blakenship and Makowski.

[2] The State charged Bradley under Ind. Code § 35-41-5-1 (attempt), Ind. Code § 35-42-4-2(a)(1) (criminal deviate conduct), and Ind. Code § 35-41-2-4 (aiding, inducing or causing an offense).

3

convictions were entered. The trial court subsequently vacated Bradley's conviction for criminal confinement on double jeopardy grounds, found that Bradley had been convicted of fifteen misdemeanor offenses and six felony offenses, that he was not a candidate for probation, that rehabilitation outside of the Department of Correction was not appropriate, that at least three of Bradley's prior convictions involved acts of violence, and that his willful and wanton disregard for the feelings, safety, and personal property of others has been ongoing since 1993. The court sentenced Bradley to fourteen years for his conviction for attempted criminal deviate conduct. The court also ordered that Bradley may petition the court to serve the last two years of his sentence on home detention.

DISCUSSION

I.

The first issue is whether the evidence is sufficient to sustain Bradley's conviction for attempted criminal deviate conduct as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

4

The offense of criminal deviate conduct in this case is governed by Ind. Code § 35-42-4-2(a), which provides in part that "[a] person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when . . . the other person is compelled by force or imminent threat of force . . . commits criminal deviate conduct, a Class B felony." At the time of the offense, deviate sexual conduct was defined to mean an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object. Ind. Code § 35-41-1-9 (now codified at Ind. Code § 35-31.5-2-94 (eff. Jul. 1, 2012)). Ind. Code § 35-41-2-4 provides in part that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." An attempt is defined by Ind. Code § 35-41-5-1, which states in part that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. Hughes v. State, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. Id. "[W]hen determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done." Hughes v.

5

State, 600 N.E.2d 130, 132 (Ind. Ct. App. 1992). The charging information alleged that Bradley "knowingly or intentionally attempted to cause another person to perform or submit to deviate sexual conduct when the other person is compelled by force or imminent threat of force, to-wit: Samuel Bradley physically blocked the cell so [T.D.] could not leave while Adam Makowski and Buddy Blankenship physically forced [T.D.'s] head down to the penis of Adam Makowski . . . ." Appellant's Appendix at 35. Thus, to convict Bradley of attempted criminal deviate conduct as a class B felony, the State needed to prove that Bradley: (1) knowingly or intentionally; (2) took a substantial step; (3) toward causing another person to perform or submit to deviate sexual conduct; (4) when he was compelled by force or imminent threat of force.

Bradley argues that the evidence shows that he was the last individual to enter the room after the incident started between T.D. and the other two inmates and that the reason he was unable to leave was because he was being touched by the other two inmates. Bradley points to his own testimony that he never touched T.D., that he never blocked T.D. from leaving the cell, that he moved out of the way and allowed T.D. to leave, and that T.D. never told him that he wanted to leave the cell. The State argues that T.D. was not required to ask to leave the room, the video recording of the incident clearly shows that Bradley physically blocked T.D. from exiting, that during the assault Bradley stood over T.D. while Makowski and Blankenship attempted to remove T.D.'s pants, and that Bradley continued to block the door even as T.D. backed into Bradley and attempted to leave. The State also argues that T.D. testified he did not feel free to leave, that T.D.'s

6

screams indicate that he wished to leave, and that T.D. was prevented from leaving in part by Bradley's actions.

Bradley essentially contends that he was merely present while T.D. was harassed and assaulted by Makowski and Blankenship and that he was not a participant in the assault. Bradley's argument is an invitation to reweigh the evidence, which we cannot do. See Jordan, 656 N.E.2d at 817. Further, the record shows that T.D. and the dispatcher testified that Bradley was one of the three men who assaulted T.D., T.D. testified that Bradley "held [him] against the bunk-bed in jail," see Transcript at 158, and on appeal we do not judge the credibility of witnesses and look to the evidence and the reasonable inferences therefrom that support the verdict. See Jordan, 656 N.E.2d at 817. In addition, the video recording of the incident, admitted as State's Exhibit 21 at trial, was played for the jury and showed that Bradley stood in or blocked the cell area where the incident or assault occurred from the larger cell block area, and T.D. identified the inmates who were visible in the recording which displayed three monitors showing the cell block area from three different angles. Based upon our review of the trial testimony and State's Exhibit 21, we conclude that the State presented evidence of probative value from which a reasonable jury could have found Bradley guilty of attempted criminal deviate conduct as a class B felony.

## II.

The next issue is whether Bradley's sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's

decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Bradley argues that the record as a whole and even the trial court's sentencing statement demonstrate that he is not the worst offender nor has he committed the worst type of crime. Bradley argues that his involvement in the case is clearly questionable and that there was no testimony that he ever physically touched or attempted to harm T.D. Bradley further asserts that his criminal history consists mainly of drug related offenses and traffic related crimes and that his prior history is not indicative of an individual that would not benefit from a probationary term. The State argues that Bradley and his co-defendants terrorized T.D. for a significant period of time before the incident because T.D. would not fight Shoaf, that Bradley watched Makowski and Blankenship assault T.D. and laughed as T.D. attempted to escape, that Bradley continually made sexually vulgar comments throughout the incident including "He's getting violated in here," "Is there any blood leaking from his butt?," and "Buddy, bring him in here, strip him naked," and that he encouraged Makowski and Blankenship as they humiliated and terrorized T.D. Appellee's Brief at 14. The State further argues that Bradley's character warrants an enhanced sentence in that he has committed fifteen misdemeanor offenses, six felony offenses, has received ten substance abuse and anger management treatment opportunities, and has continually violated various parole and probationary terms.

8

Our review of the nature of the offense reveals that Bradley, Makowski, and Blankenship threatened T.D. when he would not fight Shoaf and later physically forced T.D. out of the larger cell block area and into a smaller room where T.D. was assaulted, his pants were pulled down, and his buttocks were touched and grabbed. The three men brought T.D. back into the room when he attempted to exit. Bradley was a participant in the assault which involved Blakenship placing T.D. in a headlock and forcing his head towards Makowski's penis. The record reveals that Bradley made a number of comments during the assault of T.D., including that someone was "getting violated in here," "did he have any blood leaking from his butt?," "get him Buddy, strip him naked," and "get him in here, I've got the camera unplugged." See Transcript at 167-168. The assault ended only after T.D. pounded on the door to exit the cell block area and the jailer opened the door. With respect to the offense, the trial court stated at sentencing:

> I . . . was able to view the evidence . . . , and even though your attorney says that everything was done by inference, this court finds that there was direct evidence of your participation attempting this criminal deviate sexual conduct with [T.D.]. You followed them around. You laughed with the other perpetrators, Mr. Blankenship and Mr. Makowski. You made statements about physical violence and bleeding by [T.D.]; is he bleeding from the butt. You stood in front of the doorway. . . . And also, [T.D.] came in here and even though he didn't get much out while he was testifying, he distinctly said that you held him against the bed during a certain part of the incident which was not on the tape.

Sentencing Hearing at 9-10.

Our review of Bradley's character shows that, according to the presentence investigation report (the "PSI"), his criminal history includes convictions for resisting law enforcement as a misdemeanor in 1993, "Leaving Scene Property Damage Accident" as a misdemeanor in 1995, auto theft as a class D felony in 1997, criminal trespass as a class

9

D felony in 1996, possession of marijuana as a misdemeanor in 1996, battery resulting in bodily injury as a misdemeanor in 2000, driving while suspended as a misdemeanor in 2002, driving while suspended as a misdemeanor in 2003, failure to appear as a misdemeanor in 2004, possession of marijuana as a misdemeanor in 2005, driving while suspended as a misdemeanor in 2005, public intoxication as a misdemeanor in 2005, trafficking with an inmate as a misdemeanor in 2007, disorderly conduct as a misdemeanor in 2007, operating a vehicle while intoxicated endangering a person as a misdemeanor in 2008, strangulation as a class D felony in 2008, criminal trespass as a misdemeanor in 2008, possession of marijuana as a misdemeanor in 2009, driving while suspended as a misdemeanor in 2011, and theft as a class D felony in 2012. PSI at 4. The PSI further shows that Bradley was found to have violated the terms of his probation at least four times. The summary of legal history in the PSI states that Bradley "has violated the terms of probation on multiple occasions, violated the terms of Parole and has violated the rules of Pulaski County Jail and lost credit time" and that he "was being held in the Starke County Jail on a Parole Violation when the instant offense occurred." PSI at 10. The PSI indicates that Bradley reported that he has an alcohol and drug problem, is in need of and willing to participate in a treatment program, that he has been court ordered to undergo a substance abuse evaluation on multiple occasions, and that he completed Thinking for a Change in 2009 but not a substance abuse program. The probation officer concluded that Bradley was not a good candidate for probation and recommended that he not be placed on probation.

10

After due consideration, we conclude that Bradley has not sustained his burden of establishing that his sentence of fourteen years is inappropriate in light of the nature of the offense and his character.

For the foregoing reasons, we affirm Bradley's conviction and sentence for attempted criminal deviate conduct as a class B felony.

Affirmed.

RILEY, J., and BRADFORD, J., concur.