Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JEFFRY G. PRICE**
Peru, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ZACKERY REAHARD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1311-CR-1005 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1302-FA-108

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Zackery Reahard appeals his convictions and sentences for child molesting as a class A felony, sexual misconduct with a minor as a class B felony, child molesting as a class C felony, sexual misconduct with a minor as a class D felony, and child molesting as a class B felony. Reahard raises two issues, which we revise and restate as:

I.      Whether the evidence is sufficient to sustain certain convictions; and

II.     Whether the court erred in sentencing him.

We affirm.

FACTS AND PROCEDURAL HISTORY

Between August 2006 and July 27, 2007, Reahard lived with his mother, Mona Dalton, and his father Dave Dalton, his younger brother C.D., his sister Toccara, and Toccara's child in a house on East Ninth Street in North Manchester, Indiana. During that time, C.D. became friends with J.F. and M.S., and the three boys would spend time together at the house. Reahard, who was about nine years older than the three boys, would give the boys marijuana and smoke marijuana with them.

In late July 2007, Reahard's family moved to the Warsaw area while he moved in with a friend on Bond Street, which was next to the college. On September 3, 2007, Reahard turned twenty-one years old. J.F., who at the time was between eleven and twelve years old, would visit the home on Bond Street with C.D. and spend time with C.D. and Reahard. At some point, Reahard moved in with his family in Warsaw, and J.F. lost contact with C.D. and Reahard until September 5, 2008, when Reahard's family moved back to the Manchester area and into the Clear Creek Apartments (the "Clear Creek Home"), where they lived until April 15, 2010.

2

While living in the Clear Creek Home, Reahard began dating J.F.'s aunt, and as a result J.F. resumed visiting C.D. and Reahard. Soon after Reahard's family moved into the Clear Creek Home, J.F. and Reahard engaged in sexual activity for the first time in which J.F. "lost his virginity." Transcript at 61. J.F., who at the time was twelve years old, stayed over the night before, and when J.F., C.D., and Reahard were on the bed in Toccara's room Reahard began "showing his thing" to J.F. Id. at 56. The next night, the two boys and Reahard were in the bedroom and Reahard started "getting touchy" with J.F. on the bed. Id. at 58. C.D. decided to leave the bed and use his laptop on the floor of the room, Reahard then began "messing" with J.F.'s penis, and J.F. touched Reahard's penis. Id. at 58-59. J.F. and Reahard began to kiss, and when C.D. noticed he announced he was leaving to go visit M.S. at his house. After C.D. left, J.F. and Reahard undressed, and Reahard performed oral sex on J.F. J.F. also put his mouth around Reahard's penis. Reahard then placed J.F.'s penis into Reahard's anus, and they engaged in anal sex.

While J.F. and Reahard were naked under the covers, Reahard's mother Mona entered the room to speak with them and asked them to spend time with her. They responded in the negative, and after she left Reahard attempted to put his penis inside J.F.'s anus but was unsuccessful. Reahard and J.F. continued to kiss, and Mona again entered the room. When she observed them, she began "going off" on Reahard because J.F. was only twelve years old. Id. at 61. Mona then left the room to go to sleep, and when Reahard again attempted to initiate sexual contact J.F. pushed him away. J.F. then went home and told his best friend about what had happened. He also told C.D., but C.D. already knew what had occurred. Reahard and J.F. did not have sexual contact for some

3

time after that incident because Reahard was incarcerated for about six months beginning in January of 2009.

After Reahard was released from jail and his family moved to a residence on 103 Mill Street (the "Mill Street Home"), where they lived from April 15, 2010 through September 15, 2011, he and J.F. had "[m]any other encounters." Id. at 64. Reahard would text J.F. on a nightly basis and talk to him on the phone, and they engaged in sexual activity "too many [times] to count" before J.F. turned sixteen. Id. at 67. Specifically, J.F. and Reahard engaged in oral sex on approximately ten occasions and had anal sex in Reahard's bedroom. Reahard and J.F. would also smoke, get high, and have anal sex in another small house on the same property. Also, when J.F. was fifteen years old, he and Reahard engaged in anal sex at J.F.'s house while C.D. was also in the room. On that occasion, J.F.'s mother discovered that Reahard was there and kicked him out of the house. Later, J.F.'s mother found out about what had occurred and forbade J.F. from visiting Reahard's home. J.F. moved away and lost contact with Reahard and his family, and J.F. subsequently was put into therapy and the police were contacted.

In addition to the incidents with J.F., Reahard also engaged in sexual activity with M.S. when M.S. would visit with C.D. or stay the night. Reahard would touch M.S.'s legs and have oral sex with M.S., and sometimes they would get high before engaging in sexual contact. Beginning when M.S. was twelve years old, he engaged in anal sex, oral sex, and "hand jobs" with Reahard approximately ten times. Id. at 117. J.F. also witnessed M.S. and Reahard engaging in anal sex at M.S.'s house on one occasion. M.S.

4

believes that J.F. may have mentioned what had been occurring between Reahard and J.F. to M.S. at around the same time the incidents involving M.S. were occurring.

On February 21, 2013, the State charged Reahard with Count I, child molesting as a class A felony; Count II, sexual misconduct with a minor as a class B felony; Count III, child molesting as a class C felony; Count IV, sexual misconduct with a minor as a class D felony; Count V, child molesting as a class B felony; Count VI, child molesting as a class C felony; and Count VII, child molesting as a class A felony. Counts I-IV pertained to conduct against J.F., and Counts V-VII pertained to conduct against M.S. On September 24, 2013, the court commenced a jury trial in which evidence consistent with the foregoing was presented. Following the State's case-in-chief, the State moved to dismiss Counts VI and VII, and the court granted the motion. Mona testified as a defense witness that she observed J.F. on top of Reahard kissing Reahard and that Reahard was not responding, that she kicked Reahard out, and that she told J.F.'s mother about the incident. On September 25, 2013, the jury found Reahard guilty on Counts I-V.

On October 28, 2013, the court held a sentencing hearing in which the court identified the following aggravating circumstances: (1) Counts I and V are crimes of violence; (2) the evidence showed that Reahard seduced his victims with drugs and bragged about being a drug dealer; (3) Reahard's juvenile and adult criminal history; and (4) the imposition of a reduced sentence would depreciate the seriousness of the crimes. The court sentenced Reahard to thirty-five years, including three years suspended to probation, on Count I, ten years on Count II, four years on Count III, one and one-half years on Count IV, and twelve years on Count V. The court ordered that Counts I-IV be

5

served concurrent to one another, and that Count V be served consecutive to Counts I-IV. Thus, the court ordered that Reahard serve an aggregate term of forty-four years in the Department of Correction followed by three years of probation.

DISCUSSION

I.

The first issue is whether the evidence is sufficient to sustain Reahard's convictions on Counts I-IV.[1] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The arguments raised by Reahard on appeal all, at their core, constitute challenges to J.F.'s credibility. Specifically, Reahard argues regarding Count I that J.F. testified "emphatically" that he was twelve years old when the first sexual encounter between he and Reahard occurred and that it occurred at the Clear Creek Home, rather than the home on Ninth Street, but that due to J.F.'s birthday on October 9, 2008, there was "only one month when the encounter could have occurred . . . ." Amended Appellant's Brief at 7-8. Reahard further notes that he did not immediately move into the Clear Creek Home,

_____

[1] Reahard does not challenge the sufficiency of the evidence related to his conviction on Count V, child molesting as a class B felony, which pertained to his conduct with M.S.

6

which "further reduce[s] the opportunity for the events to occur when J.F. was still 12 years old." Id. at 8. Reahard also asserts that J.F. "told the jury, as well as the State Police Detective . . . that the first sexual encounter with Reahard occurred on New Year's Eve," and notes various problems with such testimony, including that Reahard was living on Ninth Street on December 31, 2007, and that "Reahard and his Mother testified that he went out and partied" and "would have been incapable of a sexual encounter with J.F. because he was unconscious/high or passed out." Id. at 9. Reahard also argues that J.F. presented testimony running afoul of the incredible dubiosity rule when he testified that C.D. was in the room while J.F. and Reahard were performing oral sex on each other and when J.F. stated that Mona walked into the room and "actually laid down on the bed with them and talked to them." Id. He also invokes the incredible dubiosity rule with regard to his conviction on Count III, noting specifically that the charging information alleges that the "crime occurred between March 1, 2008, and October 8, 2009," and that Reahard was incarcerated for "approximately eight months" of this time period (between January 2009 and August 2009), and "thus it was not possible for him to have a sexual encounter with J.F. at that point." Id. at 11. Regarding Count IV, Reahard argues that there is a problem with J.F.'s testimony "that several of his encounters with Reahard occurred at an apartment or out building located" at the Mill Street Home because "the building was occupied by a tenant" and J.F. "makes no mention of anyone else living at the building at the time."[2] Id. at 12.

---

[2] Reahard in his brief also makes contentions that fall short of what is considered cogent argument. For example, Reahard notes that Count II was charged as occurring between October 9, 2009 and September 15, 2011, and suggests that J.F.'s testimony was incredibly dubious because it "does not account" for an eight-month timeframe when he was incarcerated, which he notes to be "January 2009 to

The State argues that the incredible dubiosity rule does not apply, that the rule is limited to cases where a sole witness presents inherently contradictory testimony, and that J.F.'s trial testimony was not inherently contradictory, equivocal, or unworthy of credit. The State also contends that J.F.'s trial testimony is not incredibly dubious merely because he made inconsistent pretrial statements and that it was for the jury to resolve any conflicting evidence.

To the extent Reahard asserts that the incredible dubiosity rule requires reversal of his convictions, we note that the rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Id.

Reahard fails to show that the testimony of J.F. was inherently improbable merely because there was only a one-month window in which Count I could have occurred or because J.F. testified that Mona entered the room and spoke with them. Reahard's suggestions that J.F.'s testimony regarding Count III was improbable because Reahard was incarcerated for about half of the time between March 1, 2008 and October 8, 2009, or that J.F.'s testimony was improbable because he testified that he and Reahard had

---

August 2009" but which is outside the window of the charging information. Amended Appellant's Brief at 10.

8

sexual contact in an out building that was being occupied by a tenant, similarly fail. Further, J.F.'s testimony was not rendered inherently improbable because it differed from what he told the detectives regarding his first sexual encounter with Reahard. Reahard's arguments are merely challenges to J.F.'s credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. See Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003).

Based upon our review of the evidence and testimony most favorable to the convictions as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Reahard guilty beyond a reasonable doubt of child molesting as a class A felony, sexual misconduct with a minor as a class B felony, child molesting as a class C felony, and sexual misconduct with a minor as a class D felony.[3] See Brakie v. State, 999 N.E.2d 989, 998-999 (Ind. Ct. App. 2013) (finding that child victim's testimony was not inherently contradictory and that the incredible dubiosity rule did not apply and affirming the defendant's conviction for child molesting as a class A felony), trans. denied; Hampton v. State, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (finding that the testimony of the seven-year-old victim was not incredibly dubious and concluding that based upon the record the State presented evidence of probative value from which a reasonable jury could have found the defendant guilty of child molesting as a class A felony), reh'g denied, trans. denied; Surber v. State, 884 N.E.2d 856, 869 (Ind. Ct. App. 2008) (holding that the testimony of a six-year-old victim was not

---

[3] As noted above, Reahard does not challenge the sufficiency of the evidence for his conviction on Count V of child molesting as a class B felony.

incredibly dubious despite some inconsistencies, and that such inconsistencies were appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony), trans. denied.

II.

The next issue is whether the court erred in sentencing Reahard. We observe that despite titling the applicable section of his brief as "Inappropriate Sentence," Reahard does not cite to Ind. Appellate Rule 7(B), which provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Further, he presents no argument whatsoever, much less cogent argument, addressing either the nature of his offenses or his character, and instead focuses on the validity of the aggravating circumstances identified by the trial court. This court addresses the propriety of the aggravators and mitigators identified by the trial court under an abuse of discretion in sentencing standard, which, as we have repeatedly explained, is analyzed separately from the issue of whether a defendant's sentence is inappropriate. See, e.g., King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Therefore, his argument that his sentence is inappropriate is waived. Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008); Ind. Appellate Rule 46(A)(8)(a); see also Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); Smith v.

10

State, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied.

However, to the extent Reahard argues that the court found improper aggravators and cites to Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007), we note that the appropriate remedy when a court has abused its discretion is to remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." 868 N.E.2d at 491. Here, even assuming that Counts I and V were not crimes of violence, Reahard concedes that he does have a previous felony conviction for dealing in marijuana as well as misdemeanor convictions for disorderly conduct and operating with .15 grams, and that he was incarcerated between January and August of 2009. He also concedes that he provided marijuana to both J.F. and M.S. We have held that one aggravating factor can be a sufficient basis to enhance a sentence. Peoples v. State, 649 N.E.2d 638, 640 (Ind. Ct. App. 1995). We further note that Reahard does not contend that the court erred in not identifying certain mitigating circumstances and that his sentences were enhanced only minimally.[4]

Moreover, we observe that the crux of Reahard's argument appears to be that the court should have ordered he serve all of his sentences concurrent with one another and that the advisory sentence lengths are "more than sufficient to punish" him for his crimes.

_____

[4] Specifically, Count I, child molesting as a class A felony, was enhanced to thirty-five years with three years suspended to probation, which is an enhancement of two years executed and three more years of probation above the advisory sentence. See Ind. Code § 35-50-2-4. Count V, child molesting as a class B felony, was enhanced to twelve years, which is an enhancement of two years above the advisory sentence. See Ind. Code § 35-50-2-5.

11

Appellant's Brief at 14. With regard to how the court ordered Reahard to serve his various sentences, the court ordered that Counts I-IV be served concurrent with one another and that Count V, which involved a different victim, M.S., be served consecutive to the other counts. Also, to the extent that the court enhanced Reahard's sentences, we observe that based on the testimony adduced at trial, there was a multitude of uncharged conduct between Reahard and his victims.

## CONCLUSION

For the foregoing reasons, we affirm Reahard's convictions and sentences for child molesting as a class A felony, sexual misconduct with a minor as a class B felony, child molesting as a class C felony, sexual misconduct with a minor as a class D felony, and child molesting as a class B felony.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.