**Andrew Russell LUNDBERG,**
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 51S00–9808–CR–438.

Supreme Court of Indiana.

May 24, 2000.

Eugene C. Hollander, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Andrew Russell Lundberg, appeals from his convictions for the 1996 murder[1] of John Isenhour, Jr., and conspiracy to commit murder.[2] The trial court imposed a sixty-five-year sentence for murder and a fifty-year sentence for conspiracy, to run consecutively. We hold that the defendant was not entitled to discharge for delay under Indiana Criminal Rule 4(C) and that, under the facts of this case, the Indiana Double Jeopardy Clause prohibits his conspiracy conviction.

---

1. IND.CODE § 35–42–1–1.

2. IND.CODE §§ 35–41–5–2; 35–42–1–1.

## Speedy Trial Under Criminal Rule 4(C)

■ The defendant contends that the trial court erroneously denied his motion for discharge under Indiana Criminal Rule 4(C), which provides for the discharge of a defendant held to answer a criminal charge for a period aggregating more than one year, except when the delay is caused by the defendant or by reason of emergency or congestion of the court calendar. The defendant concedes that his motion for change of venue caused a 210-day delay but contends that he was entitled to be discharged when he was not brought to trial by February 5, 1998.

The defendant's jury trial was scheduled to begin on September 30, 1997. On September 25, 1997, at a pre-trial hearing, the defendant amended his witness list, adding the name of an expert witness. The State, not having had the opportunity to depose the witness or to address the evidence in preparation for trial, sought a continuance to afford it time for further discovery. The defendant objected, asserting that he had stated his intention to use an expert witness in a filing on January 15, 1997,[3] but acknowledged that he did not obtain this witness until approximately thirty days before trial.

The trial court ordered the defendant to produce his expert witness on September 29, 1997, at a hearing to determine the reliability of the expert's scientific evidence, with the State to take a deposition following the hearing. The defendant's expert did not appear at the hearing, but sent two affidavits to be used in lieu of his testimony: one describing his qualifications as a psychiatrist, and the other describing his proposed testimony. The State sought a continuance or an exclusion of the witness due to the defendant's late disclosure of the witness, and the defendant objected, asking the trial court to proceed with the trial and to allow the State to take a deposition at some time during the trial. The trial court expressed concerns about the feasibility of the defendant's request, noting that the affidavit produced by the expert raised .questions requiring a hearing to determine the scientific reliability of the evidence; that both parties might be prejudiced if the trial court were unable to determine before trial whether to permit the expert testimony, thus preventing the parties from referring to the evidence in opening argument; and that this procedure might require a significant delay in the middle of trial.

The trial court granted the continuance, finding that, although it had attempted to conduct the necessary proceedings to resolve the issues, it was unable to do so because of the defendant's actions, specifically the defendant's late amendment of his witness list, his retention and consultation with an expert within 30 days of trial, his failure to provide to the State a written report of the expert's conclusions, and his failure to present the expert at a scheduled hearing or make the expert available to the State for pretrial discovery. The trial court also "notifie[d] the parties that, when rescheduling the jury trial now vacated . . ., the cause shall receive priority consideration, but the court's trial calendar and the timeliness of notice by counsel that the cause is ready for trial will affect when the cause reasonably may be tried." Record at 841. The court ordered that the defendant contact his expert and notify the State when the expert would be available to be deposed and that a hearing on the reliability issue would be scheduled once a deposition had been obtained.

On November 3, 1997, the defendant notified the trial court that the witness would appear by agreement for a hearing on December 17, 1997. A hearing on the

---

**3.** The defendant's "Production of Witnesses and Exhibits," filed January 15, 1997, included: "# 11. Expert Psychologist or psychiatrist – identity undetermined at present." Record at 425. It appears that nothing further was disclosed until the State contacted the defendant on September 19, 1997, to determine whether the defendant planned to present expert testimony.

reliability of the scientific evidence was held on that date.[4] On January 6, 1998, the trial court scheduled the jury trial to begin on April 21, 1998. On April 3, 1998, the defendant filed a motion for discharge pursuant to Criminal Rule 4(C). The jury trial began on April 21, 1998, and on April 29, 1998, out of the jury's presence, the trial court conducted a hearing on the defendant's motion for discharge. The court denied the defendant's motion, finding that the delays about which the defendant complained were a direct result of the defendant's failure to obey the court's pretrial orders and the defendant's desire to present the testimony of the expert witness.

The defendant's failure to comply with the trial court's order that the witness appear for a hearing and deposition before trial caused a 78–day delay when the evidence reliability hearing was rescheduled for December 17, 1997. Under Criminal Rule 4(C), the time allowed for the jury trial to begin was thus extended by 78 days to April 24, 1998. Because the trial commenced on April 21, 1998, the trial court did not err in refusing to discharge the defendant under Criminal Rule 4(C).

## Double Jeopardy

The defendant contends that his conviction and sentence for conspiracy to commit murder should be vacated because the conspiracy was proven by the same facts as those used to establish the murder conviction. The defendant argues that he received multiple convictions for the commission of a single act and, citing cases addressing the Double Jeopardy Clause of the Indiana Constitution, urges that principles of double jeopardy apply.

■ To show that two challenged offenses constitute the same offense under the actual evidence test of the Indiana Double Jeopardy Clause, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999); *Guffey v. State*, 717 N.E.2d 103, 106 (Ind. 1999).

In closing argument, the State summarized the facts that it believed established the conspiracy, including the defendant's admission that there was a plan to kill the victim because Phillip Foutch, the defendant's friend and employer, wanted the victim dead and the actions undertaken by Foutch and the defendant in preparing to kill the victim. These acts included: "target practice [to show Foutch that the defendant could use the gun], shooting in[to] a block of wood [while Foutch listened outside the house to see if the shot could be heard], using [Patrick] Hanover as a lure, [purchasing] the fireworks [and setting them off immediately after the shooting to cover the sound of the gun shot], choosing Fort Rittner Bridge [as a location for disposing of the body], [storing near the murder scene] the gloves, [and] the trash bags." Record at 3262. The State also noted that an agreement could be inferred from the way the parties acted, particularly that "it all happened quickly as if there was a plan and ... before [the victim] was falling on the ground, here comes [Foutch] to ... get the supplies needed to take care of the body," record at 3262, and that the whole affair, including disposing of the body off a bridge in an isolated location, returning and cleaning the murder scene, and disposing of the soiled carpet at a different, isolated location took no more than an hour and a half.

Evidence at trial showed that Foutch purchased the gun just a few days before the shooting, that the day after the shooting Foutch wrote checks from which both the defendant and Hanover received mon-

---

**4.** It appears from argument that the State chose not to depose the expert due to the cost, instead obtaining its own expert who re-
viewed the affidavit of Dr. Davis and participated in the evidentiary hearing.

ey, and that the defendant became Foutch's partner and was added to Foutch's checking account around the time of the killing. Further, the police obtained evidence of the checks and the block of wood containing a "test" shot based upon information from the defendant, who denied that there was a conspiracy, but confirmed that he told the police about this evidence. Hanover, who was present when the victim was shot but denied knowledge of a plan, testified that the shooting appeared to him to have been very well planned. Thus, there is evidence in the record from which a jury could find a conspiracy to commit murder.

■ The actual evidence test, however, does not evaluate whether the evidence is sufficient to support a conviction, but whether there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of murder may also have been used to establish the essential elements of conspiracy to commit murder. Despite the evidence of other overt acts, the jury was instructed as follows:

A person conspires to commit a felony when, with the intent to commit the felony, he agrees with another person to commit the felony.... The State must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement. *To convict the defendant of conspiracy to commit murder, the State must have proved each of the following elements: the defendant, ... (1) agreed with Phillip Foutch to commit the crime of murder, to-wit: to intentionally kill a human being, to-wit: John A. Isenhour, Jr., (2) with the intent to commit a crime, and (3) [the defendant] performed an overt act in furtherance of the agreement to knowingly or intentionally kill another human being, to-wit: [the defendant] shot John A. Isenhour, Jr. with a three fifty* seven (.357) handgun at the home of Phillip Foutch.... If the State did prove each of these elements, beyond a reasonable doubt, you should find the defendant guilty of the crime of conspiracy to commit murder.

Record at 3300–01 (emphasis added). Thus, the jury was instructed that it could consider a single overt act—that the defendant shot the victim—in order to find defendant guilty of conspiracy. Although the State presented evidence of other overt acts that might support a conviction of conspiracy, it is reasonably possible that the jury used the same evidence to establish the essential elements of both murder and conspiracy to commit murder. Because such convictions thus violate the Indiana Double Jeopardy Clause, we vacate the conviction for conspiracy to commit murder.[5]

### Conclusion

The defendant's conviction for murder is affirmed, and his conviction for conspiracy to commit murder is vacated.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

5. In light of our resolution of this issue, we need not consider the defendant's claims of error in amending the charging instrument to add the conspiracy charge or insufficient evidence to support the conspiracy conviction.