## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2015, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard L. Berg, | December 7, 2015 |
| *Appellant-Defendant*, | Court of Appeals Case No. 34A02-1505-CR-486 |
| v. | Appeal from the Howard Superior Court |
| State of Indiana, | The Honorable George A. Hopkins, Judge |
| *Appellee-Plaintiff*. | Trial Court Cause No. 34D04-1407-FB-110 |

**Brown, Judge.**

[1] Richard L. Berg appeals his convictions and sentence for three counts of sexual misconduct with a minor as class B felonies and three counts of incest as class B felonies. He raises three issues which we revise and restate as:

I.   Whether his convictions violate double jeopardy principles;

II.  Whether the evidence is sufficient to sustain his conviction for Count II, sexual misconduct with a minor as a class B felony; and

III. Whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] During the first day of the week of spring break in March 2014, then fifteen-year-old A.V. went to stay with her father, Berg, for her first unsupervised time with him. Specifically, A.V. went to a house on Armstrong Street where a person named Kevin lived, and she stayed there with Kevin, Caroline, and Berg. That first night, Berg's friends came over, and after they left, Berg sat by A.V., started to nibble on her ear, put a blanket down on the floor, told her to pull down her pants, pulled down his pants, and put his penis in her vagina "and that happened for a little bit and then . . . [she did] something else and then that went on for about 7 hours that night and then [they] ended up in the tub." Transcript at 26. "[O]n that first night and a few times after that before [they] got in the bathtub," Berg "made [A.V.] put [her] head on his penis and put, made [her] move [her] head up and down." *Id.* at 55-56.

[3] After a few days of spring break, Berg and A.V. went to the residence of Berg's cousin, Jeremy. While at Jeremy's residence, Berg had sex with A.V. At some point, Jeremy walked in on Berg and A.V., and Berg "jumped up really fast." *Id.* at 28.

[4] A.V. visited Berg every weekend until the middle of May. At some point, Berg and A.V. went to apartment buildings and went behind a bridge. Berg said they were looking for wild mushrooms and placed a jacket down and told her to pull her pants down, and he pulled down his pants, inserted his penis in her vagina, and eventually grabbed a blue handkerchief and told her to clean up. At some point, A.V. told others about the sexual contact.

[5] On June 11, 2014, Indiana State Police Detective Michelle Jumper interviewed A.V., who said that she did not want to "tell on her dad," that she loved Berg, liked spending time with him, and that "it was complicated." *Id.* at 85. Detective Jumper went to the locations where the alleged incidents had taken place. She went to 814 South Buckeye and spoke with Jeremy Morris, but Morris "really didn't have anything to report," had just been reported by DCS on his own children, and was more worried about protecting himself against DCS. *Id.* at 80.

[6] On June 13, 2014, Detective Jumper interviewed Berg for two hours and fifteen minutes, and Berg told her that A.V. was his only biological child and that paternity had been established in 2002. He stated that he spent some time at the Armstrong Street address and some time at the Buckeye Street address and

that A.V. stayed with him at those addresses during her spring break. With respect to 422 South Armstrong Street, Berg initially denied that he had any sexual activity with A.V. and then about halfway through the interview "admitted to some activity after being questioned further." *Id.* at 166. Specifically, he admitted to two incidents during which he had taken Ativan which caused him to feel like he blacked out, he dreamed that he had sex or oral sex with someone, A.V. was staying with him, she would be there either curled up next to him or on the other couch when he woke up, and that he would either be partially clothed or not clothed from the waist down in both of those incidents.

[7] When asked if he had any sexual relationship with A.V. at 814 South Buckeye, Berg stated that he had taken Ativan, he had a dream that someone performed oral sex on him, and that A.V. was lying next to him and he was partially clothed when he woke up. Detective Jumper asked Berg if any sexual activity occurred at 400 South Apperson, and Berg stated that he took A.V. fishing that day, they were down near a sandy area by the creek, she startled him after coming up behind him, he started to have an anxiety attack because his father did something similar when he was a child, and that he took some of his medication. He said that he dreamed he had sex with someone, that he was lying on his back, and that the female was on top of him but her face was blank. He said that when he woke up at the residence on Buckeye Street he had semen in his underwear and did not know why, and thought that maybe he had a wet dream. When asked about a blue handkerchief, Berg stated his blue

handkerchief was missing but did not know why. He eventually said that if A.V. said the acts happened, then they must have happened, and referred to himself as a monster several times during the interview.

[8] On July 18, 2014, the State charged Berg with three counts of sexual misconduct with a minor as class B felonies and three counts of incest as class B felonies.[1] Count I, sexual misconduct with a minor, alleged that he performed or submitted to sexual intercourse or deviate sexual conduct with A.W. at or near 422 South Armstrong Street; Count II, sexual misconduct with a minor, alleged that Berg did perform or submit to sexual intercourse or deviate sexual conduct with A.V. at or near 814 South Buckeye Street; Count III, sexual misconduct with a minor, alleged that he performed or submitted to sexual intercourse or deviate sexual conduct with A.V. at or near 400 South Apperson Way; Count IV, incest, alleged that he engaged in sexual intercourse or deviate sexual conduct with A.V. at or near 422 South Armstrong Street, knowing that she was his biological child; Count V, incest, alleged that he engaged in sexual intercourse or deviate sexual conduct with A.V. at or near 814 South Buckeye Street, knowing that she was his biological child; and Count VI, incest, alleged that he engaged in sexual intercourse or deviate sexual conduct with A.V. at or near 400 South Apperson Way, knowing that she was his biological child.

---

[1] The State also charged Berg with battery by bodily waste as a class D felony. At trial and after the State rested, Berg's counsel moved for judgment on the evidence with respect to this count, and the court granted the motion.

[9]     A jury trial was held on April 21 and 22, 2015. A.V. and Detective Jumper testified to the foregoing. During closing argument, defense counsel summarized the evidence and stated "that's what you have to determine whether or not there was three counts of sexual misconduct and three counts of incest, which I think you probably have figured out by now involve identically the same acts but charged in two different ways." *Id.* at 200. Defense counsel later stated:

> Well, you give them something heinous and awful, incest charge, and then you give them a sexual misconduct charge and if you look, they're basically the same as far as every aspect of it except biological relation, and that way in the jury room, the people who are committed, if they are, to voting for guilty and the people who are committed, if they are, to voting for innocent, then decide that they've had enough of being in the jury room and so we'll compromise.

*Id.* at 205. In rebuttal, the prosecutor argued:

> The fact that, or the suggestion that incest wasn't a serious charge but yet an attempt to create some compromise for you in the jury room isn't true. A father has sex with his daughter is what came forward and that was what was alleged. The instruction says the defendant, Richard Berg, was 18 years of age or older, engaged in sexual intercourse or deviate sexual conduct with A.V., when she was related to the defendant biologically as a child and was less than 16 years old. It's not a compromise. That is an allegation based upon fact that's been presented before you.

*Id.* at 209. The prosecutor also stated: "You're here to decide whether A.V. and Detective Jumper are telling you the truth and that he committed the offenses,

that the dreams he was having were actual sexual intercourse with his 15 year old daughter, that he admitted is his biological daughter." *Id.* at 212.

[10] The jury found Berg guilty as charged. On May 22, 2015, the court held a sentencing hearing, found no mitigating factors, and found as aggravators Berg's criminal history, his recent violation of conditions of probation/parole, that this offense happened while he was on probation, and that he was in a position of having the care, custody, and control of A.V. Berg was sentenced to twenty years for each count, Counts II to VI to be served concurrent with each other and consecutive to Count I, for an aggregate sentence of forty years.

## *Discussion*

### I.

[11] The first issue is whether Berg's convictions violate double jeopardy principles. He argues that Counts I and IV, Counts II and V, and Counts III and VI, violate the prohibition against double jeopardy because they were based on the same evidence.

[12] The State notes that it appears Berg is contesting the validity of his convictions under the actual evidence test, and that Counts I and IV, which relate to the Armstrong Street address, do not present a double jeopardy issue because A.V. testified that she and Berg engaged in separate acts of sexual intercourse and oral sex at the Armstrong Street address. The State also points to Detective Jumper's testimony that Berg admitted to two incidents at the Armstrong Street address where he had taken Ativan and dreamed he had either sex or oral sex.

[13] With respect to Counts II and V, relating to the Buckeye Street address, the State contends there is no double jeopardy issue because A.V. testified that she had sex with Berg at the Buckeye Street residence, and she testified that "[o]ne of the times that that had happened, Jeremy had walked in on us but [Berg] jumped up really fast and Jeremy did not know what was going on." Appellee's Brief at 18 (quoting Transcript at 28). The State posits that the jury could have reasonably inferred from A.V.'s statement that Jeremy interrupted them on one occasion, and that A.V. and Berg had sex more than once at the Buckeye Street residence. The State also points out that A.V. testified she stayed with Berg for the entire week and "it happened all that week." Transcript at 25. The State concedes that with respect to Counts III and VI, there is a reasonable possibility that the jury relied on the same evidentiary facts to support these convictions based upon the act of sexual intercourse which occurred at the park location.

[14] The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense

also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49. "On appeal, the defendant bears the burden to show that his convictions violated his constitutional right to be free from double jeopardy." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002) (citing *Lutes v. State*, 272 Ind. 699, 401 N.E.2d 671, 672-673 (1980)).

[15] In order to find a double jeopardy violation under the actual evidence test, a defendant must demonstrate and a reviewing court must conclude that there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015); *Vestal v. State*, 773 N.E.2d 805, 806 (Ind. 2002), *reh'g denied*. "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (quoting *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008)). The existence of a reasonable possibility turns on a practical assessment of whether the fact finder may have latched on to exactly the same facts for both convictions. *Id.* at 720. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective . . . .'" *Hines*, 30 N.E.3d at 1222 (quoting *Lee*, 892 N.E.2d at 1234 (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002))). "In determining the facts used by the fact-finder, 'it is appropriate to consider the charging information, jury instructions, [ ]

arguments of counsel' and other factors that may have guided the jury's determination." *Hines*, 30 N.E.3d at 1222 (quoting *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832, and *Richardson*, 717 N.E.2d at 54 n.48)).

[16]   Counts I and IV alleged that Berg performed, submitted to, or engaged in "sexual intercourse or deviate sexual conduct with" A.V. at or near 422 South Armstrong Street.[2] Appellant's Appendix at 14, 17.  Counts II and V alleged that Berg performed, submitted to, or engaged in "sexual intercourse or deviate sexual conduct with" A.V. at or near 814 South Buckeye Street.[3] *Id.* at 15, 18. Similarly, Counts III and VI alleged that Berg performed, submitted to, or engaged in "sexual intercourse or deviate sexual conduct with" A.V. at or near 400 South Apperson Way.[4] *Id.* at 16, 19.  On appeal, the State maintains that there was separate evidence supporting Counts I and IV and Counts II and V.

---

[2] Specifically, Count I alleged that between March and May 2014 "at or near 422 South Armstrong Street, Kokomo . . . Berg . . . did perform or submit to sexual intercourse or deviate sexual conduct with A.V. . . . ." Appellant's Appendix at 14.  Count IV alleged that between March and May 2014 "at or near 422 South Armstrong Street, Kokomo . . . Berg . . . did engage in sexual intercourse or deviate sexual conduct with . . . A.V. knowing that [she] is related to [him] biologically as a child and the other person was less than 16 years of age, to-wit: 15 . . . ." *Id.* at 17.

[3] Count II alleged that between March and May 2014 "at or near 814 South Buckeye Street, Kokomo . . . Berg . . . did perform or submit to sexual intercourse or deviate sexual conduct with A.V. . . . ." *Id.* at 15. Count V alleged that between March and May 2014 "at or near 814 South Buckeye Street, Kokomo . . . Berg . . . did engage in sexual intercourse or deviate sexual conduct with . . . A.V. . . . knowing that [A.V.] is related to [him] biologically as a child and [A.V.] was less than 16 years of age, to-wit: 15 . . . ." *Id.* at 18.

[4] Count III alleged that between March and May 2014 "at or near 400 South Apperson Way, Kokomo . . . Berg . . . did perform or submit to sexual intercourse or deviate sexual conduct with A.V. . . . ." *Id.* at 16. Count VI alleged that between March and May 2014 "at or near 400 South Apperson Way, Kokomo . . . Berg . . . did engage in sexual intercourse or deviate sexual conduct with . . . A.V. knowing that [A.V.] is related to the defendant biologically as a child and [A.V.] was less than 16 years of age, to-wit: 15 . . . ." *Id.* at 19.

However, the State made no distinctions for the jury. The charging information and jury instructions fail to distinguish the factual bases between Counts I and IV, Counts II and V, and Counts III and VI. Further, during closing argument, the prosecutor mentioned three acts and focused on the three different addresses. Specifically, he stated:

> [A.V.] testified being 15 when her and her father engaged in sexual intercourse through March and May of 2014 when she was visiting with him on spring break, when they were staying at 422 South Armstrong. She testified to how he penetrated her with his penis and how that occurred again when they were residing yet again at another location of 814 South Buckeye Street and yet again at or near 400 South Apperson, here in Kokomo, which is a fishing area that they went there together to fish.

Transcript at 196. Defense counsel summarized the evidence and stated "that's what you have to determine whether or not there was three counts of sexual misconduct and three counts of incest, *which I think you probably have figured out by now involve identically the same acts but charged in two different ways.*" *Id.* at 200 (emphasis added). In rebuttal, the prosecutor argued that charging Berg with incest was not a compromise but did not specifically rebut defense counsel's argument that the three counts of sexual misconduct and three counts of incest were based on the same three acts.

[17] Based upon the record, we conclude that there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of Counts IV, V, and VI, may also have been used to establish all the essential

elements of Counts I, II, and III. *See Bradley v. State*, 867 N.E.2d 1282, 1285 (Ind. 2007) (observing that the proper inquiry is not whether there is a reasonable probability that the jury used different facts to convict a defendant of two counts, but whether it is reasonably possible the jury used the same facts); *Lundberg v. State*, 728 N.E.2d 852, 855 (Ind. 2000) (finding a violation where the jury was instructed that murder was the only overt act supporting conspiracy to commit murder, despite evidence of other overt acts); *Stewart v. State*, 866 N.E.2d 858, 864-865 (Ind. Ct. App. 2007) (observing that the State on appeal argued that there was separate evidence supporting two charges but did not make such a hairsplitting attempt during opening and closing arguments and that, given the language of the charging information, the evidence presented at trial, and the arguments of counsel at trial, there was a reasonable possibility the trial court utilized the same evidence to establish all of the elements of both attempted battery and criminal recklessness). Thus, we remand with instructions to vacate Counts IV, V, and VI. We note that this does not impact Berg's aggregate sentence.

## II.

[18] The next issue is whether the evidence is sufficient to sustain Berg's conviction for Count II, sexual misconduct with a minor as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the

conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. *Ferrell v. State*, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

[19] The offense of sexual misconduct with a minor is governed by Ind. Code § 35-42-4-9, which provided at the time of the offense that "[a] person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor" and that "the offense is . . . a Class B felony if it is committed by a person at least twenty-one (21) years of age . . . ."[5] Berg argues that the State offered no evidence to prove sexual intercourse or deviate sexual misconduct.

[20] Count II alleged that Berg performed or submitted to "sexual intercourse or deviate sexual conduct with" A.V. at or near 814 South Buckeye Street. Appellant's Appendix at 15. The record reveals that A.V. testified that, after staying at the residence on Armstrong Street, she and Berg went to the residence of Berg's cousin, Jeremy, and stayed there for the last few days of the week. During direct examination, the prosecutor asked A.V.: "Did a time when that--, when you had sex with them again at that address?" Transcript at 27. A.V. replied: "Yes, sir." *Id.* She also testified that "[o]ne of the times that

---

[5] Subsequently amended by Pub. L. No. 158-2013, § 445 (eff. July 1, 2014).

that had happened, Jeremy had walked in on us but [Berg] jumped up really fast and Jeremy did not know what was going on." *Id.* at 28. Detective Jumper testified that she went to "the house on Buckeye where Jeremy was." *Id.* at 79.

[21] Based on the record and A.V.'s testimony that she had sex with Berg at Jeremy's residence, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Berg had intercourse with A.V. and committed sexual misconduct with a minor as a class B felony.

### III.

[22] The next issue is whether Berg's sentence is inappropriate in light of the nature of the offenses and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[23] Berg argues that there is evidence of sexual abuse of A.V. by two other individuals. He also points to the presentence investigation report ("PSI") and asserts that "[u]nless we, as a society, decide it is ethical and cost-effective to use prison as a mental health warehouse, Berg's sentence must be modified to

provide supervised probation with a condition of intensive, even mandatory in-patient, mental health treatment." Appellant's Brief at 11.

[24] Our review of the nature of the offenses reveals that Berg engaged in sexual intercourse with his fifteen-year-old daughter multiple times. Berg also made A.V. give him oral sex. The PSI indicates that A.V. wrote that this affected her tremendously, that she has not had a restful night since it happened, and that she had trusted Berg. A.V. also wrote that she believed that Berg knew what he was doing, that it was not a dream like he tried to say, and that he gave her Spice and Ativan every time it happened.

[25] Our review of the character of the offender reveals that Berg has convictions for disorderly conduct as a class B misdemeanor in 1993, battery as a misdemeanor in Georgia in 2003, possession of cocaine/methamphetamine or a Schedule I or II narcotic drug as a class D felony in 2011, and maintaining a common nuisance as a class D felony in 2013.

[26] Berg described his childhood as very violent and stated that his father physically and sexually abused him. The PSI indicates that he wrote the following with respect to his version of the offenses:

> I was on a lot of drug's [sic] and do not remember having sex
> with my daughter. But what [I] learn[e]d in court had made me
> very sick and very much more depressed and mad at my self [sic]
> to the point that [I] just want to die because [I] have never
> wanted to hurt my baby girl. All [I] ever wanted was to have her
> in my lif[e] and for us to be happy. And now [I] hurt her very
> badly and never meant to and [I] am very very sorry for what has

happen[ed] and [I] can only pray to [G]od that one day that she will [forgive] me and give me a [chance] to try to make it up to her. I am so very sorry for what [I] did and [I] wish that it had never happened and may [G]od [forgive] me.

Appellant's Appendix at 103. He also wrote:

I think that it is very very sick that [I] let myself get so messed up on drug's [sic] to the point that this has happen[ed] and [I] am so very very sorry for it happening and [I] wish that it didn't. I am so sorry what I did to my daughter and for messing up both of [our] live's [sic]. I wish to be put to death for what happened.

*Id.*

[27]  In the "Evaluation/Summary" portion, the PSI states that Berg reported that A.V. dressed inappropriately and that he stated "[t]here is no sense in her dressing like a whore." *Id.* at 106, 108. When the probation officer asked him why he ever thought it was okay for him to have sex with his biological minor child, he replied: "She already had sex with her stepfather and another guy. She knew what she was doing." *Id.* at 108. The PSI also states that Berg "appears to lack true remorse for his offenses, blames the victim as he infers that she wanted it, asked for it, and was consenting, and has maintained a high level of narcissism and manipulative and power[-]seeking behaviors." *Id.*

[28]  Berg reported being diagnosed with brain trauma, manic depression, schizoaffective disorder, bipolar disorder, antisocial personality disorder, PTSD, psychotic tendencies, suicidal ideations, and homicidal ideations. He also reported experiencing severe anxiety/panic attacks, that he began drinking

alcohol at age eight, that it typically takes nine to ten drinks for him to feel an effect from the alcohol, that he smoked marijuana daily until 2014, and that he abused multiple prescription and illegal drugs until his arrest. The PSI states that Berg has had "ample opportunities, mental health treatment, alcohol and drug treatment, and Probation services to assist him in obtaining insurance, housing, medication, additional treatment, and other service referrals." *Id.* The PSI indicates that his overall risk assessment score puts him in the very high risk to reoffend category.

[29] After due consideration of the trial court's decision, we cannot say that the aggregate sentence imposed by the trial court is inappropriate in light of the nature of the offenses and the character of the offender.

## *Conclusion*

[30] For the foregoing reasons, we remand with instructions to vacate Berg's convictions for Counts IV, V, and VI, and affirm his convictions and sentence for Counts I, II, and III.

[31] Affirmed in part, reversed in part, and remanded.

Altice, J., concurs.

Riley, J., concurs in result without separate opinion.